# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL ACTION NO. 5:18-CV-00071-KDB-DCK

| | |
|---|---|
| MARLENE B. SCOTT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **ORDER** |
| | ) |
| IREDELL-STATESVILLE SCHOOLS | ) |
| BOARD OF EDUCATION, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**THIS MATTER** is before the Court on Defendant Iredell-Statesville Schools Board of Education's ("Defendant" or "the Board") Motion for Summary Judgment (Doc. No. 41), which Plaintiff Marlene B. Scott ("Scott") opposes. The Court has carefully reviewed the motion and considered the parties' briefs and exhibits. For the reasons discussed below, the Court will **GRANT** the motion and enter Summary Judgment in favor of Defendant.

## I. RELEVANT BACKGROUND

This is an employment discrimination dispute under Title VII of the Civil Rights Act of 1964. Plaintiff is an African-American educator who filed this action against Iredell-Statesville Board of Education after she applied for and did not receive any of the four administrative positions within the Iredell-Statesville school system. Plaintiff alleges she was more qualified than those who received the positions and was not promoted because of her race.

1

### A. Plaintiff's Work History

Plaintiff began her teaching career in 1995 at Catawba Middle School.[1] (Doc. No. 56, at 2). Her first job in the Iredell-Statesville school system started in 1999 as a teacher at East Iredell Middle School. *Id.* at 3. From 1999 to 2005, Plaintiff also served as an Instructional Facilitator at East Iredell Middle School. *Id.* at 3. An Instructional Facilitator role is a leadership position in the Iredell-Statesville school system that focuses on the school's professional development and growth for teachers. In 2005, Plaintiff became a Teacher/Instructional Facilitator at Statesville High School and Troutman Middle School. *Id.* She stayed in that position until 2009, when she was hired at Troutman Middle School as an Instructional Facilitator/Assistant Principal.[2] *Id.* She resigned from that position in 2011 and left the Iredell-Statesville school system to become a principal at an elementary school in Alleghany County. *Id.* In the summer of 2014, Plaintiff applied for positions in the Iredell-Statesville school system in an effort to be closer to home. *Id.* While she was unable to find an administrative position, Plaintiff was hired as a teacher at West Iredell Middle School and remained there until 2018. *Id.* In 2018, Plaintiff became the Assistant Principal at West Iredell High School, where she remains today. *Id.* Plaintiff received various recognitions and awards for her performance during her career.

Plaintiff's dispute with the Board began somewhere between the fall of 2014 and the fall of 2017 when she applied for numerous administrative positions in the Iredell-Statesville school system, but never received an offer. (Doc. No. 47, at 3). Specifically, Plaintiff brings this suit over

---

[1] The summary of relevant facts recited in this Order are undisputed or clearly supported in the record, as cited by the parties in their memoranda of law.

[2] The Board has offered evidence that, while the position title may include "assistant principal," this position does not have the same responsibilities as an assistant principal position. (Doc. No. 47, at 3). Plaintiff responded in discovery interrogatories that she did have assistant principal responsibilities. (Doc. No. 56-2, at 4).

four of those positions: (1) the principal position at Statesville Middle School; (2) the assistant principal position at North Iredell Middle School; (3) the assistant principal position at West Iredell Middle School; and (4) the principal position at Celeste Henkel Elementary School. Each of these positions was ultimately filled by a white male or female.

### B. The Board's Hiring Process

The Board follows a three-step process when selecting candidates for a specific school administrator position. (Doc. No. 47, at 5). Initially, the job opening is posted on a public online portal, through which both internal and external candidates can apply. *Id.* At the first step, the Board narrows the applicant pool by eliminating those who fail to meet the baseline credentials. *Id.* At the second step, the Board determines the school's specific school administrator needs and develops particularized selection criteria. *Id.* at 6. Such criteria may include experience in a particular subject area, the ability to strengthen relationships amongst staff, or prior administrative experience. At the third step, the Board selects the candidate it perceives is most qualified to meet the school's particular needs. *Id.* To assist the Board in making this determination, candidates who progress to step three typically undergo two levels of interviews. *Id.* at 7. The first interview is with employees at the particular school, otherwise known as the "school-level team." *Id.* The school-level team scores candidates based on their qualifications and how well they perceive the candidate fits the particular needs of the school. *Id.* These scores then determine who the Board selects for the second level of interviews. *Id.* Members of the Board conduct the second level of interviews and candidates are once again scored based on their performance, qualifications, and the needs of the school. *Id.* This same process was the process the Board used to select the four candidates for the positions at issue in this case.

## II. PROCEDURAL HISTORY

Plaintiff filed a charge of race discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 24, 2016. (Doc. No. 16, ¶ 27). She received a "Notice of Right to Sue" letter from the EEOC on January 26, 2018 and timely filed this action on April 4, 2018. (Doc. No. 1). In her initial complaint, Plaintiff alleged claims of race discrimination for failure to promote and retaliation under Title VII and 18 U.S.C. § 1983. *Id.* The Board moved to dismiss Plaintiff's initial complaint arguing that a number of Plaintiff's failure-to-promote claims were barred by the statute of limitations and the retaliation claims were beyond the scope of her EEOC charge. (Doc. No. 9).

On August 8, 2018, Plaintiff filed an amended complaint. (Doc. No. 12). The Board moved to dismiss based on the same grounds asserted in their previous motion to dismiss. (Doc. No. 14). Plaintiff filed a second amended complaint on September 24, 2018, this time alleging only race discrimination under Title VII for failure to promote Plaintiff regarding four specific positions within the statute of limitations. (Doc. No. 16). The Board answered on October 22, 2018. (Doc. No. 22).

The Board filed the present motion for summary judgment on September 3, 2019. (Doc. No. 41). At the same time, the Board filed an unopposed motion to seal documents supporting their motion for summary judgment. (Doc. No. 40). The Honorable Magistrate Judge David Keesler granted the Board's motion to seal on September 3, 2019. (Doc. No. 54). Plaintiff filed her response to the Board's summary judgment motion on September 17, 2019, along with a motion to seal a select number of her supporting documents. (Doc. Nos. 56, 55).

After Plaintiff filed her response, the Board filed a motion to strike an exhibit entitled "Mediation Tapes" and any reference thereto. (Doc. No. 59). The Board also filed a motion to seal

documents Plaintiff had filed in support of her response in opposition. (Doc. No. 61). Plaintiff filed two further motions to seal more documents she had previously filed with her response. (Doc. Nos. 62, 63).[3]

After multiple scheduling attempts, the Court held a hearing in Statesville on November 25, 2019 on the motion for summary judgment, motion to strike, and motions to seal. At the hearing, the Court granted the Board's motion to strike (Doc. No. 59), as well as their motion to seal (Doc. No. 61). As for Plaintiff's pending motions to seal, the Court instructed the parties to confer and submit a joint motion if they sought to seal any remaining documents. On November 27, 2019, the parties filed a joint Notice of Sealing Documents, stating there were no remaining documents they wished to seal. (Doc. No. 76).

### III.     LEGAL STANDARD

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A factual dispute is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if it might affect the outcome of the suit under the governing law." *Vannoy v. Federal Reserve Bank of Richmond*, 827 F.3d 296, 300 (4th Cir. 2016) (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013)).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact through citations to the pleadings, depositions, answers to

---

[3] The Board has also filed two motions to compel discovery and for sanctions regarding a discovery dispute. (Doc. Nos. 34, 68). The Honorable Magistrate Judge David Keesler granted the Board's first motion, ordering the Plaintiff to turn over the requested material and pay reasonable attorney's fees. (Doc. No. 64). The Board's second motion, which also includes a motion for order to show cause, remains pending before the Magistrate Judge. (Doc. No. 68).

interrogatories, admissions or affidavits in the record. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). "The burden on the moving party may be discharged by 'showing'. . . an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial," *Id*. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. *Id*. at 324.

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014); *see also Anderson*, 477 U.S. at 255. "Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015) (quoting 10A Charles Alan Wright & Arthur R. Miller et al., Federal Practice & Procedure § 2728 (3d ed.1998)). "The court therefore cannot weigh the evidence or make credibility determinations." *Id*. at 569 (citing *Mercantile Peninsula Bank v. French* (*In re French*), 499 F.3d 345, 352 (4th Cir. 2007)).

However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (internal citations omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Also, the mere argued existence of a factual dispute does not defeat an otherwise properly supported

6

motion. *Id*. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Id*. at 249–50.

In the end, the question posed by a summary judgment motion is whether the evidence as applied to the governing legal rules "is so one-sided that one party must prevail as a matter of law." *Id*. at 252.

## IV.     DISCUSSION

Plaintiff alleges that she was discriminated against because of her race when the Board did not offer her one of the four administrative positions she applied for despite what she contends are her superior qualifications. The Board argues that Plaintiff cannot raise a genuine issue of material fact that it intentionally discriminated against Plaintiff based on her race. It admits that Plaintiff has meet the minimum burden of stating a prima facie case; however, the Board asserts that she cannot show that the Board's proffered nondiscriminatory reasons are a pretext for discrimination. The Board contends that it selected more qualified candidates than Plaintiff for each position, and that when Plaintiff was the most qualified for the position, the Board hired her.

To establish a failure-to-promote claim under Title VII, a plaintiff must show that she (1) is a member of a protected class; (2) applied for the position in question; (3) was qualified for the position; and (4) was rejected for the position under circumstances giving rise to an inference of unlawful discrimination. *Barnes v. Charles Cty. Pub. Sch.*, 747 F. App'x 115, 117 (4th Cir. 2018); *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 189 (4th Cir. 2004). "If the plaintiff makes such a showing, the defendant must respond with evidence that it acted on a legitimate, non-discriminatory basis." *Worden v. SunTrust Banks, Inc.*, 549 F.3d 334, 341 (4th Cir. 2008). If the defendant does so, the plaintiff must present evidence to prove that the defendant's articulated reasons were a pretext for unlawful discrimination. *Barnes*, 747 F. App'x at 117; *Worden*, 549

7

F.3d at 341. In a failure-to-promote claim, a plaintiff can prove pretext by showing that she "was better qualified, or by amassing circumstantial evidence that otherwise undermines the credibility of the employer's stated reasons." *Heiko v. Colombo Sav. Bank, F.S.B.*, 434 F.3d 249, 259 (4th Cir. 2006); *Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 727 (4th Cir. 2019) (holding "it is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation.").

When assessing relative job qualifications, the Court looks at the criteria the employer has established as relevant to the position, not what the plaintiff subjectively thinks the qualifications should be. *Heiko*, 434 F.3d at 259; *Russel v. Harlow*, 771 F. App'x 206, 207 (4th Cir. 2019) (noting that a plaintiff "cannot establish pretext by relying on criteria of her choosing when the employer based its decision on other grounds."). Defendants, as employers, have "discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria." *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 259 (1981); *see also Heiko*, 434 F.3d at 261-62 ("When a plaintiff asserts job qualifications that are similar or only slightly superior to those of the person eventually selected, the promotion decision remains vested in the sound business judgment of the employer."). "Even if [the plaintiff's] education and outside experience were objectively superior [to the selected candidate], [the employer] could properly take into account both the objective factor [of the selected candidate's] outstanding performance . . . and the more subjective factors like his good interpersonal skills and ability to lead a team." *Amirmokri v. Baltimore Gas & Elec. Co.*, 60 F.3d 1126, 1130 (4th Cir. 1995). Keeping these principles in mind, the Court addresses each of the four positions below.

**A. Principal Position at Statesville Middle School**

The primary need for the principal position at Statesville Middle School was someone who could effectively raise expectations for students, staff, and parents. (Doc. No. 47, at 10). The Board

initially offered the position to Tywan Lawrence, an African-American male. *Id.* Lawrence turned the position down for another school position in California. *Id.* Kelly Campbell, who eventually accepted the position, was the Board's second choice. *Id.* The Board asserts that Campbell was selected because she was familiar with the Statesville Middle School community (Campbell had been the Assistant Principal at the feeder school), showed a strong commitment to the school, had strong relationships with the staff and students, had a clear vision for the school, navigated crucial adult conversations well, had a quiet and calm demeanor, and was recommended by her peers. *Id.* at 11. On the other hand, Plaintiff did not have the "nuanced persuasive and empathetic relational skills necessary to motivate the currently unmotivated staff and to navigate issues with parents," nor did she show a commitment to the individual school. *Id.* Notably, Plaintiff was not even the Board's third choice for the principal position. *Id.*

Plaintiff argues that the Board's selection criteria that a candidate be committed to Statesville Middle School is inconsistent and evidence of pretext. (Doc. No. 56, at 11-12). She points to the Board's first choice, Lawrence, who turned down the position to take another position at a different school. *Id.* Plaintiff further contends that any comments about her inability to get along with her peers were unsubstantiated and claims that she has always had good relationships with her peers. *Id.* at 12.

Initially offering the position to an African-American candidate creates a strong inference that the Board did not discriminate against Plaintiff based on her race. *See Cutshall v. Potter*, 347 F. Supp. 2d 228, 237 (W.D.N.C. 2004) ("In *Islar*, the Fourth Circuit found that the defendant employer had not acted with discriminatory motive in failing to promote the African American plaintiff to a management position, in part, because 'the first person offered the [management position] was African American." (quoting *Islar v. Ourisman Chevrolet Co., Inc.*, 172 F.3d 44

9

(table) (4th Cir. 1999)). As to Plaintiff's claims that she got along well with her peers, good relationships amongst one's peers was not a dispositive qualification. Even if a candidate's relationship with his or her peers was dispositive, Plaintiff cannot show that she was more qualified in her relationships with her peers than the selected candidate. At most, Plaintiff could argue she and Campbell were equally qualified in that area. As courts have routinely held, when an employer is deciding between two qualified candidates, the decision rests with the sound business judgment of the employer. Thus, Plaintiff has not presented evidence for which a reasonable jury could conclude unlawful pretextual discrimination by the Board.

### B. Assistant Principal Position at North Iredell Middle School

When looking to fill the assistant principal position at North Iredell Middle School, the Board was looking for a candidate who had prior middle school assistant principal experience, strengths in disciplining students and math instruction, and the time and energy to dedicate to the position. (Doc. No. 47, at 11). Plaintiff and Michael Culbreth, a white male, were the finalists for the position. *Id.* Both Culbreth and Plaintiff had prior assistant principal or principal experience; Culbreth had been a middle school assistant principal and Plaintiff had been an elementary school principal. *Id.* Ultimately, Culbreth was chosen over Plaintiff because he had been a prior math teacher and had better references. *Id.* at 12. By contrast, Plaintiff identified math as her greatest instructional weakness and, when her references were contacted, they were neutral at best. *Id.*; *see also* Doc. No. 45, ¶ 30 ("When I called [Plaintiff's] references, they were not as positive as Mr. Culbreth's. Alleghany County School's reference was very vague, as if the Superintendent did not have many positive things to say . . . . The Principal at [Plaintiff's] then-current school . . . said he had no complaints regarding her work in the classroom but that he felt like she countered some of the things he was trying to do in the school.").

In an effort to show she was more qualified for the position, Plaintiff points to her score during the interview process. Plaintiff received 447 points, while Culbreth received 444.5 points. (Doc. No. 56, at 6). She also points to the fact that the only weakness noted on her grading rubric was whether she would stay at the school. *Id.* Further, Plaintiff claims her experience as a principal and her fourteen years in the Iredell-Statesville school system (compared to Culbreth's year and a half), show that she was demonstrably more qualified. *Id.* at 5.

The Board has given a non-discriminatory reason for hiring Culbreth over Plaintiff, especially regarding his prior math experience and Plaintiff's neutral references. Interview scores alone are not dispositive of who should be offered a position. *See Holmes v. Bevilacqua*, 794 F.2d 142 (4th Cir. 1986) (holding that even though the plaintiff scored higher than the selected candidate, it was not enough to show that the failure to promote was based on the plaintiff's race); *Hux v. City of Newport News, Va.*, 451 F.3d 311, 315 ("[I]n a suit alleging failure to promote, a plaintiff seeking to rebut an employer's reliance on inferior job qualifications cannot simply compare herself to other employees on the basis of a single evaluative factor artificially severed from the employer's focus on multiple factors."). Here, the difference in interview scores is minimal, less than one percent. Plaintiff cannot establish pretext by relying on criteria of her choosing when the employer based its decision on other grounds. *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 271 (4th Cir. 2005). Thus, her comments on the grading rubric and her teacher experience in the Iredell-Statesville school system, while favorable, are not the criteria on which the Board based its decision. Plaintiff has not produced sufficient evidence of pretext behind the Board's proffered reason for hiring Culbreth over her.

**C. Assistant Principal Position at West Iredell Middle School**

For the assistant principal position at West Iredell Middle School the Board was looking for a candidate who could work well with the current principal, had high expectations and strong

interpersonal skills, and was committed to West Iredell Middle School. (Doc. No. 45, at 12). Kristie Love, a white female, and Plaintiff were the two finalists. *Id.* at 13. Love was chosen because she had been employed at West Iredell Middle School prior to being offered the assistant principal position, and had handled assistant principal duties at the school when asked.[4] *Id.* Love expressed her commitment to the school during the hiring process, as opposed to Plaintiff, who expressed that she would continue to seek principal positions even if hired as assistant principal for West Iredell Middle School. *Id.* The Board also received reports that Plaintiff had exhibited behaviors that undermined the current principal's efforts, including discrediting many of his decisions. *Id.* Additionally, the Board relied on a reference from Alleghany County that they would hire Plaintiff as a teacher, but would not hire her again as an administrator. *Id.* at 14. Even though Plaintiff was not offered the assistant principal position, she was offered the position of Instructional Facilitator at West Iredell Middle School. *Id.* This was an administrative position that came with an increase in salary and would have been a promotion for Plaintiff, yet she declined. *Id.*

Plaintiff claims that Love had only recently graduated with her masters and had no assistant principal or principal experience. (Doc. No. 56, at 7). In addition, Plaintiff submits that she had great rapport with the staff at the West Iredell Middle School, so much so that she was voted Teacher of the Year, and that the current principal had never expressed to her, or on her evaluations, that she created conflict. *Id.* at 8. Plaintiff argues the current principal's recommendation was inconsistent with her evaluations and is enough to show pretext in the Board's reasoning for not hiring her. *Id.*

---

[4] Love had been the Instructional Facilitator prior to being offered the assistant principal position. At oral argument, the Board stated that an assistant principal is the next direct step up from an Instructional Facilitator position.

When faced with equally qualified candidates, the Board has discretion in determining who to hire. Prior assistant principal or principal experience was not a requirement for the position, and even though Plaintiff had such experience, she has not shown that she was "discernibly better qualified" for the position. *See Cherry v. Elizabeth City State Univ.*, 147 F. Supp. 3d 414, 424 (E.D.N.C. 2015) ("[Plaintiff] has not raised a genuine issue of material fact concerning whether he was discernably better qualified than [the selected candidate]."). The current principal's statements about Plaintiff do not create an inconsistency in the Board's reasoning—at most, the principal's comments were merely undocumented in her written evaluations. Plaintiff's own subjective assessments of her qualifications and fit for the position are not enough to show a genuine dispute of racial discrimination. *See DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) ("With respect to opinion testimony, we have repeatedly explained that '[i]t is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff.'" (quoting *Evans v. Tech. App. & Servs. Co.*, 80 F.3d 954, 960-61 (4th Cir. 1996)).[5]

Moreover, the fact that Plaintiff was offered a promotion at West Iredell Middle School is a strong inference against racial animus as a motivating factor in the Board's decision. *See Proud v. Stone*, 945 F.2d 796, 798 (4th Cir. 1991) ("When the hirer and firer are the same individual, there is a powerful inference relating to the 'ultimate questions' that discrimination did not motivate the employer . . . .").

---

[5] Plaintiff cites to *Westmoreland*, 924 F.3d 718, to support her inconsistency claim. In *Westmoreland*, the plaintiff was sixty-one years old when she was fired. A thirty-seven-year-old employee took her place. The employer claimed plaintiff was fired because she had misrepresented a date on a form, but at the time this misrepresentation happened, the plaintiff was repeatedly assured her infraction was not serious and was nothing to worry about. In contrast, Plaintiff has only shown silence on her evaluations, not an inconsistency in the Board's reason for not hiring her. In fact, the Board has, at all times, alleged that the reference from her then-current principal was a reason she was not chosen for the position.

### D. Principal Position at Celeste Henkel Elementary School

For the principal position at Celeste Henkel Elementary School, the Board was mainly concerned about finding a candidate who could improve the school's poor academic performance. (Doc. No. 47, at 14). Keeley Ward, a white female, was offered the position. *Id.* Out of thirteen candidates, Ward was ranked first. *Id.* Plaintiff was ranked ninth. *Id.* Ward ranked significantly higher than Plaintiff in every criterion at the first stage interview. *Id.* Additionally, Ward had been in the assistant principal position at Celeste Henkel Elementary School, had concrete plans to propel success at the school, and had great references from the staff at the school. *Id.* at 14-15.

Plaintiff claims in her brief that she should have received the position because she is well-known for her curriculum development and that her principal experience, compared to Ward's lack of principal experience, made her more qualified. (Doc. No. 56, at 13-14). However, at oral argument, Plaintiff's counsel conceded that this ninth-place ranking makes it much harder to show that she was demonstrably more qualified and gave no further argument. Without additional evidence, plaintiff cannot establish sufficient evidence of pretext in the Board's justification for not hiring her. *See, e.g.*, *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 319-20 (holding that the plaintiff had failed to show sufficient evidence of pretext to avert summary judgment when she scored lower than the selected candidate during the interviews and did not suggest a flaw in the rating system). Plaintiff's argument regarding her principal experience is, once again, only evidence of Plaintiff severing one qualification from the myriad of qualifications the Board may have considered and attempting to make it dispositive.

### V. CONCLUSION

Plaintiff has not established a genuine dispute of material fact as to whether the Board used unlawful discriminatory criteria to pick one employee to promote among other, similarly qualified

employees for any of the four positions. Accordingly, Defendant is entitled to summary judgment on all of Plaintiff's claims.

**NOW THEREFORE IT IS ORDERED THAT**:

The Board's "Motion for Summary Judgment" (Doc. No. 41) is **GRANTED**, Plaintiff's Complaint is **DISMISSED**, and **SUMMARY JUDGMENT** is hereby entered in favor of the Board on the claims in this action. The Clerk of Court is directed to close this case.

**SO ORDERED**.

Signed: December 4, 2019

Kenneth D. Bell
United States District Judge